IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| Reinhardt Enterprises, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION TO DISMISS** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 3:24-cv-143 |
| Kaseya US LLC and BNG Holdings, LLC, | ) | |
| as successor in interest to | ) | |
| BNG Holdings, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Kaseya US LLC, and BNG Holdings, LLC, as alleged successor in interest to BNG Holdings, Inc., move to dismiss Plaintiff Reinhardt Enterprises, LLC's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 13. Reinhardt opposes the motion (Doc. 17) and moved for a hearing (Doc. 18). For the reasons below, the motion to dismiss is granted.

**I.    BACKGROUND**

On March 1, 2016, Reinhardt and BNG Holdings, Inc. entered into an agreement where BNG hired Reinhardt to market BNG's credit card processing services. Doc. 1 ¶¶ 14-15. The term of the agreement was three years, with a provision to automatically renew the agreement for an additional year, each year, "unless either party notifies the other no later than 30 days prior to the end of the current term that it does not wish to renew this agreement." Doc. 1, ex. A § 7.1. The agreement also allowed early termination. Either party could terminate the agreement if the other party failed to cure a breach within thirty days of receiving written notice of the breach or if the other party became insolvent. Id. § 7.2. Additionally, BNG could terminate the agreement if Reinhardt materially defaulted in its compliance with the card associations' (i.e., Visa and

Mastercard) operating rules or if Reinhardt committed fraud. Id. The agreement prohibited Reinhardt from soliciting merchants who transacted with BNG for five years "following any termination of this Agreement." Id. § 6.1. Relevant here, the agreement bound the parties and "their respective successors and authorized assigns." Doc. 1 ¶ 20.

Effective September 1, 2021, Reinhardt and BNG amended their agreement. Id. ¶ 17. The amendment states that the original agreement's terms remained in effect unless expressly amended. Doc. 1, ex. B § 3. Reinhardt's complaint focuses on one provision in the amendment that entitled Reinhardt to receive a buy-out fee if BNG terminated the agreement. Doc. 1 ¶ 18. That section states:

> 8.1 <u>Compensation to Sales Representative Following Termination</u>. If this Agreement is terminated by BNG and such termination is not for (i) a material, uncured default of Sales Representative as set forth in Section 7.2, (ii) Other Cause, (iii) Sales Representative's death or (iv) in connection with Sales Representative's Disability, BNG agrees, subject to Sales Representative's timely execution of a reasonable release of claims against BNG and its affiliates, to pay to Sales Representative a one-time buy out fee equal to (the "<u>Qualifying Termination Buy-out Fee</u>") (i) thirty-six multiplied by (ii) the then current amount of monthly residual compensation owed to the Sales Representative at the time of such buy out. If this Agreement is terminated under any other circumstances and Sales Representative has a "separation from service" (as defined in Treasury Regulations Section 1.409A-1(h)(2)), BNG shall have no further obligations for payment of any compensation or fees under this Agreement. If payable, the Qualifying Termination Buy-Out Fee shall be paid to Sales Representative within thirty (30) days of Sales Representative's execution of a reasonable release of claims referenced above, and in no event later than the date that is two and one-half (2½) months following the last day of the fiscal year in which such termination occurred.

Id. ¶ 19.

Days later, on September 3, 2021, BNG sold all its shares to Kaseya. Id. ¶ 21. Kaseya chose to continue the relationship with Reinhardt until January 26, 2024, when it sent Reinhardt a letter titled "Non-Renewal of Independent Sales Representative Agreement dated March 1, 2016, between BNG Holdings Inc., and Reinhardt Enterprises." Id. ¶¶ 25-26. In its letter, Kaseya

informed Reinhardt that it "decided to discontinue the utilization of [Reinhardt's] services as an Independent Sales Representative, effective February 29, 2024, in accordance with Clause 7.1 of the [Agreement]." Id. ¶ 28 (alterations in original). Reinhardt then sued, alleging that Kaseya breached the agreement because it did not pay the buy-out fee after it sent Reinhardt its letter indicating its intent not to renew the agreement. Id. ¶ 46.

## II.     LAW AND ANALYSIS

Kaseya moves to dismiss Reinhardt's sole claim for breach of contract for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Reinhardt contends that it sufficiently pleaded its claim. At issue is the interpretation of the agreement and the amendment. This presents a pure question of law. See Secura Ins. Co. v. Deere & Co., 101 F.4th 983, 988 (8th Cir. 2024) ("But the interpretation of an unambiguous contract is a question of law that district courts may decide before discovery at the motion to dismiss stage.").

### A.     Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a) requires a pleading to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." But a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Gorog v. Best Buy Co., 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570.

While courts generally must ignore matters outside the pleadings when considering a motion to dismiss under Rule 12(b)(6), "[c]ourts may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting a motion to dismiss under Rule 12(b)(6) into one for summary judgment." Roberson v. Dakota Boys & Girls Ranch, 42 F.4th 924, 928 (8th Cir. 2022) (quotation and citation omitted); see also Neubauer v. FedEx Corp., 849 F.3d 400, 403 (8th Cir. 2017) ("We also look to [the contracts] . . . embraced by the pleadings or attached to the complaint as exhibits.").

**B.    Breach of Contract**

In its complaint, Reinhardt alleges it is entitled to the buy-out fee because Kaseya terminated the agreement when it sent Reinhardt the January 26, 2024, letter, even though Kaseya styled the letter as a nonrenewal. Kaseya argues that termination and nonrenewal are separate and substantively distinct terms, and the parties understood that these terms have different effects under their agreement.

> The construction of a written contract to determine its legal effect is a question of law. Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc., 541 N.W.2d 432, 433 (N.D. 1995). Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. N.D.C.C. § 9-07-03; Lire, at 433-34. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9-07-04; Lire, at 434. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9-07-06; Lire, at 434.

Blasi v. Bruin E&P Ptnrs., LLC, 2021 ND 86, ¶ 10, 959 N.W.2d 872 (quoting Hess Bakken Investments II, LLC v. AgriBank, FCB, 2020 ND 172, ¶ 8, 946 N.W.2d 746). Courts interpret words in a contract according to their ordinary meaning. N.D. Cent. Code § 9-07-09. "The ordinary meaning is the definition a non-law-trained person would attach to the term." Widdel v. Cont'l

4

Res., Inc., 551 F. Supp. 3d 959, 965 (D.N.D. 2021) (quoting Martin v. Allianz Life Ins. Co. of N. Am., 1998 ND 8, ¶ 12, 573 N.W.2d 823, 826).

The agreement does not explicitly distinguish between termination and nonrenewal, and neither term is specifically defined. But, there is a difference. The First Circuit articulated the difference as follows:

> 'Termination' is typically defined as the 'act of bringing to an end or concluding,' Webster's Third New International Dictionary 2359 (2002), or a 'conclusion or discontinuance,' Black's Law Dictionary 1700 (10th ed.2014). By contrast, 'nonrenewal' means 'a failure to renew,' see id. at 1220, where 'renew' typically means to 'make or do again,' Webster's Third New International Dictionary 1922 (2002), or to "restor[e] or reestablish[ ]," Black's Law Dictionary 1488 (10th ed.2014).

Mason v. Telefunken Semiconductors Am., LLC, 797 F.3d 33, 42 n.6 (1st Cir. 2015).

As an example of the difference between termination and nonrenewal, Kaseya cites a North Dakota case recognizing "a functional distinction between nonrenewal and discharge" in the North Dakota Century Code pertaining to school superintendents' contracts. Sailer v. Rhame Pub. Sch. Dist. No. 17, 455 N.W.2d 588, 590 (N.D. 1990). There, the school chose not to renew its superintendent's contract for the following school year. The court distinguished between nonrenewal and discharge by stating that in the context of a "nonrenewal, the School District honors the existing contract. In a discharge situation, the superintendent is immediately dismissed notwithstanding the existing contract." Id. Similar to discharge, termination brings an immediate end to the agreement. Like the school in Sailer, Kaseya honored its contractual obligations to Reinhardt through the expiration of the current term by deeming nonrenewal effective February 29, 2024, the last day of that current term. Kaseya sent its nonrenewal letter on January 26, more than thirty days before the end of the term, so it complied with the agreement's terms for nonrenewal.

Reinhardt argues that the global structure of the agreement shows that termination and nonrenewal are synonymous. Not so. Section 7.1 states that the agreement renews annually, and it allows either party to end the relationship by nonrenewal by indicating "it does not wish to renew this Agreement." Nothing in the agreement explicitly states the effect of nonrenewal. By contrast, the first sentence of Section 8.1 establishes the buy-out fee if Kaseya <u>terminates</u> Reinhardt. The second sentence of Section 8.1 provides that "[i]f this Agreement is terminated under any other circumstances . . . BNG shall have no further obligations for payment of any compensation or fees under this Agreement." Put simply, these provisions create a structure where Reinhardt receives a buy-out fee if Kaseya terminates the agreement, but neither party owes the other a fee if Reinhardt terminates the agreement. If the Court accepts Reinhardt's interpretation that Kaseya owes it the buy-out fee after a nonrenewal, Section 7.1's annual renewable term becomes superfluous. Kaseya would always owe Reinhardt the buy-out fee, and Reinhardt would never owe Kaseya a fee. Effectively, the contract would last in perpetuity rather than the renewable annual term established by Section 7.1. <u>See e.g.</u>, <u>Mason</u>, 797 F.3d at 43 ("The severance provisions for termination without cause are generous . . . and the contracting parties may well have wanted to ensure that either side could revisit those provisions periodically. The non-renewal clause offered the parties just such a vehicle.").

The conclusion that nonrenewal and termination have separate and different effects under the agreement is well supported by caselaw from other courts. See <u>Tufaro v. Oklahoma ex rel. Bd. of Regents for Univ. of Okla.</u>, 107 F.4th 1121, 1133-34 (10th Cir. 2024) ("The district court's plain reading of the Handbook upholds this distinction between termination and non-renewal and rightly 'gives effect to both provisions[.]'" (alteration in original) (citation omitted)); <u>Sullivan v. etectRx, Inc.</u>, 67 F.4th 487, 492 (1st Cir. 2023) ("'Non-renewal' and 'termination' are distinct terms having

6

different meanings." (quoting Mason, 797 F.3d at 42)); Hubbard v. Oral & Maxillofacial Assocs., LLC, 784 F. App'x 635, 640 (10th Cir. 2019) ("Thus, as the district court correctly observed, the employment agreement specified two different ways it could end: either by nonrenewal or by termination."); ABC Acquisition Co. v. Koziel, 2019 WL 3733289, at *3 (N.D. Ill. Aug. 8, 2019) ("Read together, the former provided a means for choosing not to renew the employer-employee relationship at one-year intervals, and the latter provided a means for ending that relationship at any time between those intervals. [19-1] §§ 2, 5.4. The former did not trigger severance pay obligations, and the latter did."); Rogers v. Renewable Tex. Energy RC, LLC, 2018 WL 11680985, at *4 (N.D. Tex. Aug. 14, 2018) ("Nonrenewal is provided for in a separate section than termination, and only the termination section requires severance."). In Rogers, the plaintiff made essentially the same argument Reinhardt makes here; the defendant owed Rogers severance pay because nonrenewal is a subset of termination. Rogers, 2018 WL 11680985, at *3. The court disagreed and held that the nonrenewal and termination provisions were distinct. Because the defendant did not terminate Rogers, but rather elected to not renew the contract, the defendant did not owe Rogers severance pay. The same is true here. The nonrenewal term is separate and distinct from the termination and buy-out provision of the amendment. So, the agreement established separate ways to end the contractual relationship. And like in Rogers, Kaseya stated in its letter to Reinhardt that it elected nonrenewal pursuant to Section 7.1.

      Reinhardt further argues that because the parties used the phrase "immediate termination" in Section 2.12, they must have contemplated that nonrenewal and termination were the same. But Section 2.12 fits into the agreement's overall structure that provides different remedies for different termination scenarios. First, Section 7.2 allows either party to terminate the agreement if the other party does not cure a breach within thirty days of receiving notice of the breach.

Conversely, Section 2.12, captioned "Exclusivity," allows "immediate termination" of the agreement if Reinhardt attempts to market the services of a competitor. The parties gave separate meaning to this exclusivity provision by removing the opportunity to cure if Reinhardt breached the exclusivity provision. Third, Section 8.1 establishes the buy-out fee if Kaseya terminates Reinhardt for a reason other than under Section 7.2. So, the agreement establishes three escalating remedies for Reinhardt based on the type of termination: (1) Reinhardt has no opportunity to cure and is immediately terminated if it violates Section 2.12's exclusivity provision; (2) Kaseya must give Reinhardt thirty days to cure a breach under Section 7.2 before Kaseya can terminate Reinhardt; and (3) Reinhardt receives a buy-out fee if Kaseya terminates the agreement for reasons other than those in Section 7.2. But importantly here, none of these scenarios pertain to a nonrenewal. The parties' use of "immediate termination" in Section 2.12 does not prevent a distinction between nonrenewal and termination.

Reinhardt claims that Section 6.1's non-solicitation clause would be meaningless if the Court distinguishes between nonrenewal and termination. It also highlights that Section 6.1 uses the phrase "any termination" to argue that termination must include a nonrenewal. The Court disagrees. By using "any termination" in Section 6.1, the parties intended the non-solicitation provision to apply whether Kaseya or Reinhardt terminated the agreement. Regardless of which termination scenario explained above applies, the non-solicitation provision constrains Reinhardt for five years after termination. But the applicability of Section 6.1 to a nonrenewal is not currently before the Court, so the Court will not decide that issue.

Finally, Reinhardt contends that the agreement is ambiguous. "[A] contract term is not ambiguous simply because an imaginative party conjures up an alternate interpretation." Mason, 797 F.3d at 42. Based on the above, the agreement is unambiguous. Because the nonrenewal and

termination provisions are separate and distinct, Reinhardt cannot plausibly allege that Kaseya breached the agreement by failing to pay the buy-out fee after Kaseya sent Reinhardt the nonrenewal letter. Thus, Reinhardt's complaint fails to state a claim for which relief can be granted.

### III.  CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the motion to dismiss for failure to state a claim. (Doc. 13) is **GRANTED**. Given the extensive briefing on the motion, Reinhardt's motion for a hearing (Doc. 18) is **DENIED**. Reinhardt's complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 16th day of December, 2024.

/s/ *Peter Welte*
Peter D. Welte, Chief Judge
United States District Court